# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 44

### OCTOBER TERM, A.D. 2019

*April 1, 2020*

DIANE LOZANO, State Public
Defender,

Petitioner,

v.

THE CIRCUIT COURT OF THE
SIXTH JUDICIAL DISTRICT and
HONORABLE PAUL S. PHILLIPS,
Circuit Court Judge,

Respondents.

S-19-0121

*Original Proceeding*
*Petition for Writ of Certiorari*
*Circuit Court of Campbell County*
*The Honorable Paul S. Phillips, Judge*

*Representing Petitioner:*
 Bridget Hill, Wyoming Attorney General; Michael J. McGrady, Deputy Attorney General, Cheyenne, Wyoming. Argument by Mr. McGrady.

*Representing Respondents:*
 Hampton K. O'Neill, John A. Masterson, and Alaina M. Stedillie of Welborn Sullivan Meck & Tooley, P.C., Casper, Wyoming. Argument by Mr. O'Neill.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

*DAVIS, C.J., delivers the opinion of the Court; KAUTZ, J., files a specially concurring opinion.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS, Chief Justice.**

[¶1]    In May 2019, State Public Defender Diane Lozano notified the Circuit Court of the Sixth Judicial District that until further notice, the public defender was not available to take appointments to represent misdemeanor defendants due to an excessive caseload and shortage of attorneys in its Campbell County office.  Shortly thereafter, the circuit court entered orders appointing Ms. Lozano, or her representative, to represent misdemeanor defendants in two cases.  When the local public defender's office declined the appointments, the court held Ms. Lozano in contempt.  We granted Ms. Lozano's petition for a writ of certiorari and now reverse.

## ISSUE

[¶2]    The dispositive issue is:

> 1.  Did the circuit court err in ruling that the public defender must accept all appointments to serve as counsel for indigent defendants unless and until the appointing court rules otherwise?[1]

## FACTS

[¶3]    On May 1, 2019, the circuit court received a hand-delivered letter from State Public Defender Diane Lozano.  The three-page letter was addressed to circuit court judges Paul S. Phillips and Wendy M. Bartlett and advised:

> I know you are aware of our staffing issues in [the] Campbell County Public Defender office. We have 4.5 attorneys handling the workload of 7.5 attorneys. We are now in a situation where we can no longer provide ethical and effective counsel for the workload in Gillette. Because of this and pursuant to the Public Defender workload standards, I am informing you that we are not available to take misdemeanor cases until our staffing numbers reach the necessary levels. Please see W.S. § 7-6-105(b). Our workload standards require that an office be below 100%; our Gillette office is now at 168% of workload maximum standards.

---

[1] Our references to the public defender throughout this opinion are to the office of the public defender as a whole, not to Ms. Lozano in particular.

1

[¶4]   Ms. Lozano explained the public defender policies on maximum workloads, how those policies were derived, and how she applied the standards contained in the policies. She further explained:

> In essence, if the public defender field offices have workloads that exceed 100%, the right to counsel is jeopardized; a lawyer with an excessive workload cannot provide competent, diligent or conflict free representation. These attributes of effective assistance of counsel are required not only by case law but are requirements of the Code of Professional Responsibility. The State Public Defender and Bar Counsel have worked closely on this matter and he agrees that excessive workloads result in unethical representation. When an attorney cannot meet his/her ethical obligations, she not only jeopardizes the client's constitutional rights, she jeopardizes her license to practice law.  The Public Defender has determined that when a workload exceeds 100% within a field office, that the field office will no longer be able to accept new cases. This would then require the courts to either reduce the number of public defender appointments, to allow defendants to represent themselves or to appoint private counsel.  I have determined that the least harm to the system and to the indigent accused [is] to declare that the public defender is unavailable to accept new misdemeanor cases. Once my office is fully staffed, we will again accept new misdemeanor cases.
>
> To add to the crisis, nobody is applying to work for the Public Defender in Gillette. Our turnover is high and becomes cyclical: when staffing levels are low, the attorneys who remain with us have to work the overload and they become burned out and eventually quit. Furthermore, our attorneys are working on a market pay from almost a decade ago and when that market analysis occurred it did not include local attorney pay. We know that the Campbell County Attorney's (CCA) office (who hired two of our attorneys) pays much more and includes benefits and amenities our office cannot match.  The CCA also has 2-3 times the support staff as our field office in Gillette.  Although we do not know why attorneys are reluctant to work for us, we do know why they are reluctant to keep working for us.  I hope we can attract qualified applicants to work for us in Gillette.  As of now, we have an attorney who will start working for us August 1, 2019.  But nobody else is applying.  I will do my part to aggressively recruit and hire new

attorneys and I am working with the Governor and the budget office to address in further budgets the ability and resources we need to retain attorneys in Campbell County.

I understand that you may have to appoint private counsel which would require the Public Defender to compensate those attorneys pursuant to W.S. § 7-6-109. I have informed Governor Gordon of this possibility as well as the possibility that paying for private attorneys in Campbell County may well "bankrupt" the entire Public Defender budget.

I want you to know that this decision was not one made lightly nor was it made without hesitation. I believe my attorneys are the best defense attorneys in the state. But no matter [what] the quality of an attorney is, he cannot do the work of two attorneys. I can no longer ask my attorneys to jeopardize their professional licenses, nor can I allow our understaffing to harm the right to counsel for defendants in Campbell County.

I understand full well the enormity of this decision. If I could reach another conclusion I would. I hope we can use this as an opportunity to better determine who qualifies for public defender services and what cases are assigned a court appointed attorney. I have also copied [the] County Attorney . . . on this letter, as I know he and his staff can assist with those determinations.

The Public Defender in Campbell County is at the end of the constitutional and ethical rope that enables us to honor the indigent accused's right to counsel. [The supervising attorney in our Gillette office] can express to you the particulars of being over worked and what that looks like on a day to day and case by case basis.

I apologize sincerely and wish we could address this in another way. I do not believe there is another option. Of course, I am available at your convenience to discuss this matter.

[¶5]   On May 6, 2019, Judge Phillips entered an order appointing Ms. Lozano or her representative as counsel for Devan Stricker, a defendant in a misdemeanor case. On the same date, Judge Bartlett entered an order appointing Ms. Lozano or her representative as counsel for Ryan Johnson, also a misdemeanor defendant. On May 7, 2019, the field supervisor of the local public defender office provided notice in each case that no attorney

there was available to accept the appointment and directed the court to its authority to appoint private counsel. The public defender referenced and attached Ms. Lozano's May 1 letter to each notice.

[¶6] In response to the public defender's declinations, the circuit court, on that same date, issued orders to show cause in the Stricker and Johnson cases. The orders directed Ms. Lozano to appear and show cause why she should not be found in contempt of court "for willful failure to abide by" the court's order to provide public defender services. The orders were thereafter consolidated for purposes of the contempt hearing, which was set for May 21, 2019. On May 13, the court issued orders appointing private counsel in both the Stricker and Johnson cases, as authorized by the Public Defender Act.

[¶7] On May 21, 2019, the court held a hearing on the order to show cause and received the evidence Ms. Lozano presented as to why she should not be held in contempt. State Bar Counsel Mark Gifford testified that a public defender has the same legal obligations as a private attorney. He further testified that the public defender's policies on caseloads and excessive caseloads "are a reasoned implementation of the principles that have been carefully developed by the ABA on a national level." He added:

> I think the policies do support a way of measuring when an attorney's caseload gets to the point where the attorney has no ethical choice but to decline representation. Rule 1.16 makes it clear that an attorney should not undertake representation if he can't comply with the Rules of Professional Conduct. And the ultimate point at which he can't provide effective representation is when your caseload is so high that you are not able to adequately and professionally represent each of your clients.

[¶8] The field supervisor for the local public defender office also testified. He explained the difficulties created by the local office's understaffing and excessive caseload and cited specific instances in which he felt he had been inadequately prepared because of his caseload.

> Q. Based upon your understanding of the attorneys that work in the Public Defender's Office here, what do you think the impact would be on the morale if the office was to deal with an ethical complaint about an attorney having too many cases, excessive caseloads?
>
> A. I am always – I'm not sure if I phrase the right word but maybe apprehensive that a complaint is going to come about me because I have cases where I appear and I have not ever

4

met the client before the hearing. I meet them in the hall five minutes before and [sic] him or her, and just last week I had a probation revocation and I met the client less than five minutes before that hearing. I'd never even seen him before. I had not had time to review his history at all. All I knew essentially was what was hanging over his head.

I asked him what he wanted to do. He said admit. We came in. He admitted. I learned during the course of the hearing that he had a bunch of mental health issues that I wasn't aware of. I didn't even know the underlying facts of the case that he was being revoked on and – and so I'm apprehensive that at some point that's going to come back to bite me, that I'm not providing the representation that I should.

I had a DUI third case last week where the gentleman had set it for a change of plea and we came in and I had never read the ASI [substance abuse evaluation]. The individual, because of his ASI, was eligible for DUI court but because I hadn't read his ASI I didn't advise him about DUI court, which DUI court can save him 15 days in jail, so that was a major miss by me. A complaint could arise from that and so, yes, I'm apprehensive about that.

Every time I do a trial I try to take as many notes as I can in the file of all the things that I wish I could have done to prepare and didn't so that if there's an ineffective assistance claim it, at least, lists down there what I wished I could have done. I don't tell my clients this but most of the time, especially on misdemeanor cases, I've never read their police report. I've never watched their videos from the police. I've had no time to really investigate their case at all, and maybe I should be telling them that I haven't done that but I – I have chosen not to.

[¶9] Ms. Lozano testified to the steps taken to staff the Campbell County office, as well as her efforts to avoid the need to decline misdemeanor appointments. She further testified that she did not willfully disregard the circuit court's appointment orders and believed that she had no choice but to declare the office unavailable for misdemeanor appointments.

[¶10] On May 23, 2019, the circuit court issued an order denying Ms. Lozano's motion to dismiss and finding her in contempt. As to the public defender's ability to decline an appointment, the court found that "the public defender has an affirmative, statutory

5

obligation to represent defendants until and unless relieved by the trial court." The court rejected the public defender's assertion that its continued acceptance of all appointments would result in ethical violations, finding the claim to be speculative. It further reasoned that even if accepting the appointments were to result in ethical violations, that was not a basis to decline appointments because the rules of professional conduct must yield to the public defender's statutory obligations. The court concluded that the discretion to appoint counsel was vested with the court, and that the public defender must file a motion to withdraw once an appointment order issues. Because Ms. Lozano did not file motions to withdraw and did not undertake the ordered representation of the misdemeanor defendants, the court concluded that she had willfully failed to comply with its lawful orders and held her in contempt. It then ordered:

> . . . Diane Lozano, Wyoming State Public Defender, shall pay to the Clerk of Court, Campbell County Circuit Court Two Hundred Fifty Dollars ($250) per day, commencing this date and continuing each day until the Wyoming State Public Defender or her representative enters an appearance in *State v. Johnson*, CR 2019-0340 or until further order of the Court;

> . . . Diane Lozano, Wyoming State Public Defender, shall pay to the Clerk of Court, Campbell County Circuit Court Two Hundred Fifty Dollars ($250) per day, commencing this date and continuing each day until the Wyoming State Public Defender or her representative enters an appearance in *State v. Stricker*, CR 2019-0688 and CR 2019-1460 or until further order of the Court;

> . . . Diane Lozano, Wyoming State Public Defender, shall pay to the Clerk of Court, Campbell County Circuit Court One Thousand Dollars ($1,000) per day, commencing this date and continuing each day until the Wyoming State Public Defender or her representative shall accept all qualifying cases for which she has been appointed by the Circuit Court for the Sixth Judicial District, Campbell County and assign an assistant public defender to each case or implement and administer a program with private attorneys for recommended appointment pursuant to W.S. § 7-6-109 or substitution pursuant to U.R.D.C. Rule 102.

[¶11] On May 30, 2019, Ms. Lozano filed a petition for writ of certiorari and/or prohibition requesting this Court's review of the circuit court's order. We granted the petition for writ of certiorari.[2]

## STANDARD OF REVIEW

[¶12] In finding that Ms. Lozano's petition for writ of certiorari should be granted, we cited *Saunders v. Hornecker*, 2015 WY 34, 344 P.3d 771 (Wyo. 2015). In *Saunders*, we observed that the writ of certiorari "emanates from the Wyoming Constitution, Wyo. Const. art. 5, § 3, and is invoked when a case from a lower court involves an important state question or is of sufficient public significance to justify a determination by this Court." *Saunders*, ¶ 14, 344 P.3d at 776 (citing *In re Gen. Adjudication of All Rights to Use Water in the Big Horn River Sys.*, 803 P.2d 61, 67 (Wyo. 1990)). "[C]ertiorari should be granted when 'timely resolution of matters coming to our attention is of extreme and lasting importance to the citizens of this state and may contribute to judicial efficiency.'" *Id*.

[¶13] Our decision to grant Ms. Lozano's petition requires that we review the circuit court's interpretation of the Public Defender Act. Our review of the court's reading of the Act presents a question of statutory interpretation, which is a question of law that we review de novo. *Sullivan v. State*, 2019 WY 71, ¶ 7, 444 P.3d 1257, 1259 (Wyo. 2019) (citing *Parkhurst v. State*, 2019 WY 63, ¶ 9, 443 P.3d 834, 836 (Wyo. 2019)).

## DISCUSSION

[¶14] The circuit court held that the public defender must accept all appointments to serve as counsel for indigent defendants unless and until the appointing court rules otherwise. In so holding, it made a number of rulings concerning the requirements of the Public Defender Act. *See* Wyo. Stat. Ann. §§ 7-6-101, *et seq*. (LexisNexis 2019). It found that sections 104 and 105 of the Act conflicted and that section 104 controlled because it was the later enacted provision. From there, it concluded that if the public defender wishes to decline an appointment, it must file a motion to withdraw, and that the discretion to grant or deny that motion is vested entirely in the court. Finally, it concluded that the public defender may not assert its unavailability for appointments on ethical grounds because such considerations are speculative and because the Act controls over the rules of professional conduct.

[¶15] We will address each conclusion in turn and in accordance with our rules of statutory interpretation.

---

[2] On June 4, 2019, the circuit court granted Ms. Lozano's motion to stay the contempt order pending our review.

"When we interpret statutes, our goal is to give effect to the intent of the legislature, and we 'attempt to determine the legislature's intent based primarily on the plain and ordinary meaning of the words used in the statute.'" *Fugle v. Sublette County School Dist. No. 9*, 2015 WY 98, ¶ 8, 353 P.3d 732, 734 (Wyo. 2015) (quoting *Krenning v. Heart Mountain Irrigation Dist.*, 2009 WY 11, ¶ 9, 200 P.3d 774, 778 (Wyo. 2009)). "Where legislative intent is discernible a court should give effect to the 'most likely, most reasonable, interpretation of the statute, given its design and purpose.'" *Adekale v. State*, 2015 WY 30, ¶ 12, 344 P.3d 761, 765 (Wyo. 2015) (quoting *Rodriguez v. Casey*, 2002 WY 111, ¶ 20, 50 P.3d 323, 329 (Wyo. 2002)).

> We therefore construe each statutory provision *in pari materia*, giving effect to every word, clause, and sentence according to their arrangement and connection. To ascertain the meaning of a given law, we also consider all statutes relating to the same subject or having the same general purpose and strive to interpret them harmoniously. We presume that the legislature has acted in a thoughtful and rational manner with full knowledge of existing law, and that it intended new statutory provisions to be read in harmony with existing law and as part of an overall and uniform system of jurisprudence. When the words used convey a specific and obvious meaning, we need not go farther and engage in statutory construction.

*PacifiCorp, Inc. v. Wyo. Dep't of Revenue*, 2017 WY 106, ¶ 10, 401 P.3d 905, 908-09 (Wyo. 2017) (quoting *Nicodemus v. Lampert*, 2014 WY 135, ¶ 13, 336 P.3d 671, 674 (Wyo. 2014)).

*Sullivan*, ¶ 10, 444 P.3d at 1259-60 (quoting *Wyo. Jet Center, LLC v. Jackson Hole Airport Bd.*, 2019 WY 6, ¶ 12, 432 P.3d 910, 915 (Wyo. 2019)).

### A.    Sections 104 and 105 of the Public Defender Act

[¶16]   We begin with the circuit court's interpretation of section 104 of the Act and with its conclusion that section 104(a) conflicts with section 105(b).  Section 104(a) provides:

8

(a) The public defender shall represent as counsel any needy person who is under arrest for or formally charged with having committed a serious crime if:

(i) The defendant requests counsel; or

(ii) The court, on its own motion or otherwise, orders appointment of counsel and the defendant does not affirmatively waive or reject, on the record, the opportunity to be represented by legal counsel in the proceeding.

Wyo. Stat. Ann. § 7-6-104(a).

[¶17]  Section 105(b) of the Act provides:

At the person's initial appearance the court shall advise any defendant who is a needy person of his right to be represented by an attorney at public expense. The court shall further explain to the needy person the possibility that he may be ordered to reimburse the state for the costs associated with his legal representation. If the person charged does not have an attorney and wishes one, the court shall notify an available public defender for the judicial district or shall appoint an attorney to represent the needy person if no public defender is available.

Wyo. Stat. Ann. § 7-6-105(b).

[¶18]  The circuit court interpreted section 104(a)'s statement, "The public defender ***shall represent*** as counsel any needy person," to be a mandate that requires the public defender to accept all court appointments.  The court then found section 105(b)'s language, which requires the court to "***notify an available public defender*** for the judicial district" or "appoint an attorney to represent the needy person ***if no public defender is available***" to be inconsistent with the section 104(a) mandate.  Because section 104(a) is the newer provision, the court reasoned that it must control.

[¶19]  We find the circuit court's interpretation flawed because it fails to consider section 104 in context.  Once considered in context, section 104(a) can be harmonized with section 105(b) and both provisions can be given effect.  *See Britain v. Britain*, 2018 WY 101, ¶ 28, 425 P.3d 978, 987 (Wyo. 2018) ("We do not interpret statutes in a way which would render any statutory language meaningless.").

[¶20]   The Public Defender Act "was designed to secure for those needy persons defined in the statute the constitutional right to be represented by counsel as provided by the Sixth Amendment to the United States Constitution and by Article 1, § 10 of the Constitution of the State of Wyoming." *Jandro v. State*, 781 P.2d 512, 520 (Wyo. 1989).  To that end, the Act creates the office of the state public defender and also authorizes the appointment of private attorneys at public expense.  Wyo. Stat. Ann. §§ 7-6-103(a) and 109.[3]  Also consistent with its overarching purpose, the Act describes an indigent defendant's right to representation, provides for notice to the defendant of his rights, and directs the process for appointment of counsel.  Wyo. Stat. Ann. §§ 7-6-104, 105, and 109.  In contrast to the circuit court, we do not read section 104 of the Act as the provision that defines a court's appointment authority.  Based on the Act's plain language and history, we instead view section 104 as the provision that describes an indigent defendant's right to representation, and sections 105 and 109 as the provisions that direct the appointment process.[4]

[¶21]   The Public Defender Act was enacted in 1977.  1977 Wyo. Sess. Laws Ch. 170.  In its original version, the Act required the governor to establish public defender districts and appoint a public defender to each district.  *Id*.  In 1987, the Act was renumbered and amended to create the office of the state public defender.  1987 Wyo. Sess. Laws Ch. 176.

---

[3] Section 109 provides in relevant part:

> (a) Nothing in this act shall prevent a court on its own motion or upon application by the state public defender or by the individual defendant, from appointing an attorney other than the public defender to represent the defendant or to assist in the representation of the defendant at any stage of the proceedings or on appeal.

> (b) If a court assigns an attorney to represent a needy person, it may recommend a reasonable rate of compensation for his services and shall determine the direct expenses for which he should be reimbursed. The state public defender shall consider the court's recommendation and the customary compensation as prescribed by the standard fee schedule promulgated pursuant to W.S. 7-6-103(c)(vi), and shall pay the appointed attorney for his services when the case for which he was appointed is concluded.

> (c) An attorney appointed under subsection (b) of this section shall be compensated for his services with regard to the complexity of the issues, the time involved, prevailing local fees of attorneys, the amount reasonably necessary to provide a defense as is required by constitutional process and other relevant considerations as determined by the court.

Wyo. Stat. Ann. § 7-6-109.

[4] Although we find the relevant provisions of the Act clear and unambiguous, we may still look to the law's history to confirm its meaning.  *Robert L. Kroenlein Trust ex rel. Alden v. Kirchhefer*, 2015 WY 127, ¶ 27 n.1, 357 P.3d 1118, 1127 n.1 (Wyo. 2015) (a court may look to extrinsic aids of interpretation to confirm an unambiguous statute's meaning) (quoting *Parker Land & Cattle Co. v. Wyo. Game & Fish Comm'n*, 845 P.2d 1040, 1045 (Wyo. 1993)).

When the Act was renumbered and amended in 1987, section 104(a) was almost identical to what it was in 1977:

> (a) A needy person who is under formal charge of having committed, is being detained under a conviction of, or who is being detained by a law enforcement officer for a serious crime is entitled:
>
> > (i) To be represented by an attorney to the same extent as a person having his own counsel is so entitled; and
> >
> > (ii) To be provided with the necessary services and facilities of representation including investigation and other preparation.

1987 Wyo. Sess. Laws Ch. 176.

[¶22] In 1989, the Act was amended again. 1989 Wyo. Sess. Laws Ch. 121, § 1. In that round of amendments, section 104(a) was amended to read as it does to this day:

> (a) The public defender shall represent as counsel any needy person who is under arrest for or formally charged with having committed a serious crime if:
>
> > (i) The defendant requests counsel; or
> >
> > (ii) The court, on its own motion or otherwise, orders appointment of counsel and the defendant does not affirmatively waive or reject, on the record, the opportunity to be represented by legal counsel in the proceeding.

1989 Wyo. Sess. Laws Ch. 121, § 1; Wyo. Stat. Ann. § 7-6-104(a).[5]

[¶23] It is clear that before section 104(a) was amended in 1989, it was directed to defining when an indigent defendant is entitled to a court-appointed attorney and what that right entails. *See* 1987 Wyo. Sess. Laws Ch. 176, § 1. We conclude that the 1989 revision narrowed section 104(a)'s focus, but by its plain terms, it addresses only when an indigent

---

[5] The other amendment to section 104 was to subsection 104(c)'s list of proceedings at which an indigent defendant is entitled to counsel. 1989 Wyo. Sess. Laws Ch. 121, § 1.

11

defendant is entitled to representation. Section 104(a) does not establish a court's appointment authority or mandate that the public defender accept all appointments.

[¶24] Section 104(a) provides for the representation of any needy defendant upon the meeting of two conditions. The first condition requires that he or she be "under arrest for or formally charged with having committed a serious crime." Wyo. Stat. Ann. § 7-6-104(a). The second condition is met by satisfying either subsection 104(a)(i), the defendant requests counsel, *or* subsection 104(a)(ii), the court orders appointment of counsel and the defendant does not object to the appointment or waive his right to counsel. *Id*. The subsection (a)(i) and (ii) alternatives are each aimed at ascertaining whether the defendant wants representation. In other words, the right to representation described in section 104(a) attaches when the qualifying defendant indicates one way or the other that he wants an attorney. The right is not dependent on a court appointment, and the reference to the court's appointment serves only to aid in determining whether the defendant has invoked the right to counsel.

[¶25] When the section 104(a)(ii) reference to a court appointment is read in context, it plainly is not intended to be a statement of the court's authority to appoint the public defender. We likewise do not view section 104(a) as a mandate that the public defender accept all appointments.

[¶26] Section 104 as a whole addresses the right to representation and what that entails. Section 104(b) specifies the items that will be provided at public expense, and section 104(c) lists the proceedings at which an indigent defendant is entitled to representation. Section 104(d) rounds out the statute with the proviso, "A needy person's right to a benefit under subsection (a) or (c) of this section is not affected by his having provided a similar benefit at his own expense, or by his having waived it, at an earlier stage." Wyo. Stat. Ann. § 7-6-104(d). The focus of section 104 is thus on the what and when of the right to representation, not on whether the representation is by a public defender or appointed attorney.

[¶27] In keeping with that focus, section 104 uses the terms attorney, public defender, and counsel throughout its provisions. *See, e.g.*, Wyo. Stat. Ann. § 7-6-104(c) (variously using the terms attorney, public defender, and counsel in proceedings at which defendant is entitled to representation). It is apparent that the legislature used the terms attorney, public defender, and counsel interchangeably. Otherwise we would have to believe the legislature defined the right to representation to include the right in particular to a public defender and at the same time mandated a public defender in some proceedings and not in others. We see no reason for such an interpretation. *See Sullivan*, ¶ 10, 444 P.3d at 1259-60 ("Where legislative intent is discernible a court should give effect to the 'most likely, most reasonable, interpretation of the statute, given its design and purpose.'") (quoting *Wyo. Jet Center*, ¶ 12, 432 P.3d at 915).

[¶28]  Our interpretation is further confirmed by the fact that the legislature left sections 105(b) and 109 untouched by its 1989 amendments.  Section 105(b) continued to provide, as it does today, that "[i]f the person charged does not have an attorney and wishes one, the court shall notify an available public defender for the judicial district or shall appoint an attorney to represent the needy person if no public defender is available."  1989 Wyo. Sess. Laws Ch. 121; Wyo. Stat. Ann. § 7-6-105(b).  Section 109 continued to provide, as it does today, for the appointment and compensation of private counsel.  1989 Wyo. Sess Laws Ch. 121; Wyo. Stat. Ann. § 7-6-109.  With sections 105(b) and 109 in place, the legislature had no need to address a court's appointment authority in the unrelated provision of section 104(a).

[¶29]  In that regard, we disagree with the circuit court's assertion that the replacement of public defender districts with the office of the state public defender rendered section 105(b)'s availability language obsolete and meaningless.  This essentially suggests an implied repeal of the section 105(b) language.  Concerning implied repeals, we have said:

> "[O]ur longstanding rule is that repeals by implication are not favored and will not be indulged if there is any other reasonable construction." *In re Estate of Meyer*, 2016 WY 6, ¶ 29, 367 P.3d 629, 638 (Wyo. 2016). A repeal by implication is only appropriate when "the later statute is so repugnant to the earlier one that the two cannot logically stand together, or that the whole subject of the earlier statute is covered by the later one having the same object, clearly intending to prescribe the only rules applicable to the subject." *Id*.

*Bird v. Wyo. Bd of Parole*, 2016 WY 100, ¶ 15, 382 P.3d 56, 64 (Wyo. 2016).

[¶30]  As we have interpreted section 104(a), there is no conflict between it and section 105(b).  The two provisions address different subjects and can logically stand together.  Moreover, the circuit court's assertion that the section 105(b) availability language is a remnant of the prior public defender district system that does not fit with the current system finds no support in the Act's history.  The district system was replaced with the office of the state public defender when the Act was amended and renumbered in 1987.  1987 Wyo. Sess. Laws Ch. 176.  Section 105(b)'s availability language was added at that same time. 1987 Wyo. Sess. Laws Ch. 176.  Section 104(a) was not amended concurrently with the creation of the state public defender system, and nothing in its language suggests that it was motivated by that prior change.[6]

---

[6] We do not have the benefit of legislative history to tell us why section 104(a) was amended in 1989.  We surmise that it may have been because its former language, which stated that an indigent defendant is entitled to "be represented by an attorney to the same extent as a person having his own counsel," stated the right to counsel more broadly than guaranteed by the Sixth Amendment.  For example, though it is not without restriction, the Sixth Amendment generally recognizes that a defendant who retains his own

[¶31]  By interpreting section 104(a) as we have, we are able to harmonize sections 104(a) and 105(b).  Section 104 defines the parameters of a defendant's right to representation, and section 105(b) defines the process for court appointments.  We are also able to avoid rendering any part of the Act meaningless or effecting what would be essentially an implied repeal of the section 105(b) language.

[¶32]  Having determined that section 105(b) supplies the process for the appointment of a public defender, and that it remains the controlling law, we turn to the question of when and how section 105(b) availability determinations are to be made.

## B.      Effect of Appointment Order and Public Defender's Availability

[¶33]  The circuit court ruled that the determination of a public defender's availability is a court function and must be addressed on a case-by-case basis through the filing of motions to withdraw.  The court also rejected the public defender's claim that it was unavailable because continued representation of misdemeanor defendants would result in violations of the rules of professional conduct.  It reasoned that such claims are too speculative to support a declaration of unavailability, and that even if the representation would cause a violation, the public defender's statutory obligations under the Public Defender Act take precedence over the rules of conduct and the rules must yield.  We disagree with this reading of the Act.

[¶34]  We will address first the court's ruling that once it issues an order of appointment, the public defender may only assert its unavailability through a motion to withdraw.  We will then turn to the question of whether the public defender's ethical obligations can serve as its basis for declaring itself unavailable for appointments.

## 1.      Requirement of a Motion to Withdraw

[¶35]  In ruling that the public defender may only assert its unavailability through a motion to withdraw, the circuit court relied on Rule 102 of the Uniform Rules for District Courts (U.R.D.C.) and Rule 1.16(c) of the Wyoming Rules of Professional Conduct.  Rule 102 provides in relevant part:

>        (a)(1) An attorney appears in a case:

---

attorney is entitled to an attorney of his choosing. *United States v. McKeighan*, 685 F.3d 956, 966 (10th Cir. 2012).  The Sixth Amendment does not extend that same right to a defendant who is represented by court-appointed counsel. *Snow v. State*, 2012 WY 18, ¶ 10, 270 P.3d 656, 659 (Wyo. 2012) ("A defendant does not have the right to 'appointed counsel of his choice nor to counsel who would blindly follow his instructions.'") (quoting *Allen v. State*, 2002 WY 48, ¶ 27, 43 P.3d 551, 561 (Wyo. 2002)).

(A) By attending any proceeding as counsel for any party;

(B) By permitting the attorney's name to appear on any pleadings or motions, except that an attorney who assisted in the preparation of a pleading and whose name appears on the pleading as having done so shall not be deemed to have entered an appearance in the matter; or

(C) By a written appearance. Except in a criminal case, a written entry of appearance may be limited, by its terms, to a particular proceeding or matter.

(2) Except as otherwise limited by a written entry of appearance, an appearing attorney shall be considered as representing the party or parties for whom the attorney appears for all purposes.

\* \* \* \*

(c) Counsel will not be permitted to withdraw from a case except upon court order. Except in the case of extraordinary circumstances the court shall condition withdrawal of counsel upon the substitution of other counsel by written appearance. In the alternative, the court shall allow withdrawal upon a statement submitted by the client acknowledging the withdrawal of counsel for the client, and stating a desire to proceed pro se. An attorney who has entered a limited entry of appearance shall be deemed to have withdrawn when the attorney has fulfilled the duties of the limited entry of appearance.

U.R.D.C. 102.[7]

[¶36]  In the cases before us, the public defender did not attend a proceeding as counsel for either misdemeanor defendant, it did not place its name on any motion or pleading in either case, and it did not file a written notice of appearance in either case.  It took none of the actions that Rule 102 deems an entry of appearance and representation of a party, and Rule 102 therefore did not require that it file a motion to withdraw in either case.

[¶37]  The order of appointment does not change this result.  First, Rule 102 does not identify a court's unilateral order of appointment as one of the ways that an attorney is

_____

[7] Rule 1.02 of the Uniform Rules for Circuit Courts provides that the Uniform Rules for the District Courts shall govern practice before the circuit courts.  U.R.C.C. 1.02.

deemed to have appeared in a case. Each of the ways in which Rule 102 deems an attorney to have appeared in a case requires an affirmative step on the part of the attorney. Only upon the taking of one of those steps does Rule 102 deem an attorney to be a party's representative. U.R.D.C. 102(a)(2) ("[A]n appearing attorney shall be considered as representing the party or parties for whom [he] appears[.]").

[¶38] Similarly, we have held that an order of appointment does not establish a public defender's representation of a defendant.

> Whether it was intended that the attorney "shall represent" the defendant when he receives the notification or assignment or when it is transmitted is not made clear. However, as indicated, common sense and practicality would indicate the necessity for the attorney to have knowledge of the appointment and have time to react thereto with reference to conflict of interest, health reasons, scheduling, etc.
>
> Proper judicial process would be thwarted in many instances if the appointment alone of counsel to represent a defendant established the fact of representation itself. Many times counsel promptly calls attention of the appointing authority to conflicting interests which make the appointment improper. In such cases, should the defendant be able to secure a dismissal of the action on the basis of the appointment which was immediately withdrawn as a conflict of interest? We think not. The representation itself does not occur until there is some acknowledgment by counsel of the appointment. The acknowledgment may be a failure to assess the conflict and ask for a removal in a prompt fashion after learning of the appointment.

*Chavez v. State*, 604 P.2d 1341, 1346-47 (Wyo. 1979).[8]

---

[8] In *Chavez*, the Court discussed the appointed attorney's ability to request removal as counsel or move for withdrawal, but the question of whether appointed counsel could decline an appointment or was required to file a motion to withdraw was not before the Court. Moreover, the statute in effect when *Chavez* was decided spoke in mandatory terms now absent from the Public Defender Act. It provided:

> (c) If a court determines that the person is entitled to be represented by an attorney at public expense, it shall promptly notify the public defender or assign an attorney, as the case may be.
> (d) Upon notification or assignment under this section, the public defender or assigned attorney, as the case may be, shall represent the person with respect to whom the notification or assignment is made.

*Chavez*, 604 P.2d at 1346 (quoting § 7-1-111, W.S.1977).

16

[¶39]  The result is the same under the rules of professional conduct.  Rule 1.16 provides in relevant part:

> (a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:
>
> > (1) the representation will result in violation of the rules of professional conduct or other law;
>
> > (2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client; or
>
> > (3) the lawyer is discharged.
>
> * * * *
>
> (c) A lawyer must comply with applicable law requiring notice to or permission of a tribunal when terminating a representation. When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.

Wyo. R. Prof. Conduct 1.16.

[¶40]  The public defender did not enter an appearance in either misdemeanor case, and the circuit court's appointment order did not establish the public defender's representation. Because the public defender was not terminating its representation of the misdemeanor defendants, neither Rule 102 nor Rule 1.16 required it to obtain court permission to withdraw.

[¶41]  This conclusion is consistent with section 105(b), which provides:

> At the person's initial appearance the court shall advise any defendant who is a needy person of his right to be represented by an attorney at public expense. The court shall further explain to the needy person the possibility that he may be ordered to reimburse the state for the costs associated with his legal representation. ***If the person charged does not have an attorney and wishes one, the court shall notify an available public defender for the judicial district or shall appoint an attorney to represent the needy person if no public defender is available***.

17

Wyo. Stat. Ann. § 7-6-105(b) (emphasis added).

[¶42] Section 105(b) directs what is to happen at a defendant's initial appearance. The court is to "notify an *available* public defender," or appoint an attorney "if no public defender is available." By its plain terms, section 105(b) contemplates that even before an appointment is made, a determination may have been made that the public defender is not available for an appointment. Consistent with that potential, it does not direct the appointment of the public defender, but instead provides that the court shall *notify* the public defender. Because section 105(b) contemplates that the determination of availability may be made before or simultaneously with the court's notification, we cannot read it to mandate that a determination of unavailability may occur only through the filing of a motion to withdraw.[9]

[¶43] That begs the question of who is to make the determination of unavailability, the appointing court or the public defender. Neither section 105(b) nor any other provision of the Act dictates a procedure for determining a public defender's availability at the initial appearance stage of the proceedings. Given this lack of a required procedure, and the fact that section 105(b) directs the court to *notify* an *available* public defender, we read section 105(b) to contemplate that it is the public defender who will make the determination of its availability before representation is undertaken.[10]

[¶44] We disagree with the circuit court that allowing the public defender to determine its availability before or at the time of appointment is inconsistent with the court's broad authority under the Act and W.R.Cr.P. 44. The court no doubt has a broad range of authority and obligations under the Act, but no provision directs that its discretion extends to determining the public defender's availability under section 105(b). Nor does Rule 44 place that finding within the court's purview. It provides that the court "shall generally appoint the public defender's office to represent indigent persons, but may, for good cause, appoint private counsel." W.R.Cr.P. 44(e)(1). Consistent with section 105(b) of the Act, the public defender's assertion of unavailability would constitute good cause to appoint private counsel.[11]

---

[9] We do not intend to dictate the practice a court follows in making its appointments for indigent defendants. If that practice is to issue in the first instance an order of appointment to the public defender, we see no problem with that. We reiterate, however, our holding in *Chavez* that the appointment itself does not establish the public defender's representation of a defendant. *Chavez*, 604 P.2d at 1346-47. An order of appointment serves to notify the public defender that an indigent defendant is in need of representation. Upon issuance of the appointment order, the public defender may enter its appearance or decline the appointment.

[10] Of course, if the public defender enters an appearance and then determines it is unavailable, U.R.D.C. 102 and Wyo. R. Prof. Conduct 1.16 would require a motion to withdraw.

[11] We are not persuaded otherwise by the cases cited in the circuit court's order or its brief on appeal, which suggest or hold that the decision whether the public defender may decline an appointment is vested with the appointing court. We have decided the questions of whether a motion to withdraw is required and who has discretion to determine the public defender's availability based on our specific statutory language. We

[¶45] This conclusion neither undermines nor is inconsistent with an appointing court's authority over its orders of appointment, but instead allocates discretion in a workable manner. The public defender is in the best position to know its resources, including its attorneys, the skills and experience of its attorneys, and the weight and complexity of each office's caseload. We see little to be gained by requiring an evidentiary hearing for each individual case in which the public defender declares its unavailability based on those factors that are uniquely within its knowledge. As the circuit court noted in its contempt order, in the short time between the public defender's notice of unavailability and the issuance of its order on May 23, the court made nearly three dozen appointments of private counsel. A hearing in each case would have required an expenditure of court and public defender resources that would not serve the interests of judicial economy and would have further depleted the public defender's resources.

[¶46] Moreover, we do not see that allowing the public defender to determine its availability before accepting an appointment will devolve into the chaos or shirking of responsibility that was predicted during oral argument. Just as the public defender has an ethical obligation to decline representation when it will result in a violation of the rules of professional conduct, it also has a countervailing obligation not to avoid an appointment except for good cause.

> A lawyer shall not seek to avoid appointment by a tribunal to represent a person except for good cause, such as:
>
> > (a) representing the client is likely to result in violation of the Rules of Professional Conduct or other law;
> >
> > (b) representing the client is likely to result in an unreasonable financial burden on the lawyer; or
> >
> > (c) the client or the cause is so repugnant to the lawyer as to be likely to impair the client-lawyer relationship or the lawyer's ability to represent the client

Wyo. R. Prof. Conduct 6.2.

---

have reviewed the public defender statutes of the other states, and none of those are akin to Wyoming's section 105(b), with its "notify" and "available" language. That being the case, the decisions of courts from other states offer little guidance in our interpretation of the obligations and discretion of the court and the public defender under sections 105(b).

[¶47]  We turn then to the circuit court's ruling that a public defender's concerns with its ethical obligations and concerns that it cannot provide effective assistance of counsel cannot provide a basis for the public defender to declare itself unavailable.

## 2. Public Defender's Availability

[¶48]  The circuit court rejected the public defender's showing of its unavailability on grounds that its concerns of unethical and ineffective assistance to their clients were speculative.  It further concluded that even if the public defender's work load caused it to violate the rules of professional conduct in its representation of its clients, its obligation under the Act to represent indigent defendants controlled over the rules, and the public defender's ethical concerns could not provide a basis to declare her office unavailable.  We disagree.

[¶49]  We begin with the circuit court's ruling that the public defender's statutory obligations trump her ethical obligations.  At the heart of this issue is what the legislature meant when it provided that the public defender is to be appointed to represent a qualifying defendant if the public defender is "available."  Wyo. Stat. Ann. § 7-6-105(b).  The Act does not define the term so we give it its plain and ordinary meaning and "presume that the legislature has acted in a thoughtful and rational manner with full knowledge of existing law, and that it intended new statutory provisions to be read in harmony with existing law and as part of an overall and uniform system of jurisprudence."  *Sullivan*, ¶ 10, 444 P.3d at 1260 (quoting *Wyo. Jet Center*, ¶ 12, 432 P.3d at 915).  Additionally, we will not presume "that the legislature intended to enact a law in violation of constitutional restrictions." *Circuit Court of Eighth Judicial Dist. v. Lee Newspapers*, 2014 WY 101, ¶ 27, 332 P.3d 523, 532 (Wyo. 2014) (quoting *Hanson v. Town of Greybull*, 63 Wyo. 467, 479, 183 P.2d 393, 397 (1947)).

[¶50]  The term "available" means "present or ready for immediate use."  *Merriam-Webster's Collegiate Dictionary* 84 (11th ed. 2007).  The circuit court did not define the term, but given its rejection of the public defender's ethical concerns, and its argument on appeal that the section 105(b) concern with availability was addressed to the physical location of the public defender's offices, it is apparent that the court limited the term to mean "present."  We find no basis under the Act to so narrowly interpret the term.

[¶51]  First, as we discussed above, the availability language was added to the Act at the same time the Act changed from districts to the state public defender.  There is simply no indication then that the availability language relates to the former system of districts.  Additionally, we long ago recognized that the Act "was designed to secure for those needy persons defined in the statute the constitutional right to be represented by counsel as provided by the Sixth Amendment to the United States Constitution and by Article 1, § 10 of the Constitution of the State of Wyoming."  *Jandro*, 781 P.2d at 520.  The Sixth Amendment right to counsel is more than the right to have counsel present.

20

> "That a person who happens to be a lawyer is present at trial alongside the accused, however, is not enough to satisfy the constitutional command." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Neither judges nor public defenders satisfy "[t]he Constitution's guarantee of assistance to counsel ... by mere formal appointment." *Avery v. Alabama*, 308 U.S. 444, 446, 60 S.Ct. 321, 84 L.Ed. 377 (1940). Rather, "[a]n accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair." *Strickland*, 466 U.S. at 685, 104 S.Ct. 2052. "In other words, the right to counsel is the right to *effective* assistance of counsel." *Kimmelman v. Morrison*, 477 U.S. 365, 377, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) (emphasis added).

*State ex rel. Missouri Public Defender Comm'n v. Waters*, 370 S.W.3d 592, 606 (Mo. 2012); *see also Kuren v. Luzerne County*, 146 A.3d 715, 735-36 (Penn. 2016) ("It is the defense itself, not the lawyers as such, that animates *Gideon's* mandate. If the latter cannot provide the former, the promise of the Sixth Amendment is broken.").

[¶52] Because the legislature intended the Act to secure an indigent defendant's Sixth Amendment right to counsel, and because we presume that the legislature does not intend an unconstitutional result, we must interpret the term "available" to mean more than just that the public defender is present. While being present is certainly a component, we interpret the term "available," as used in section 105(b), to mean that the public defender is present and ready, meaning ready and able to provide effective assistance of counsel.

[¶53] Given our premise that the legislature acts with full knowledge of the law, we likewise presume that it understood that attorneys are regulated and must comply with rules governing their conduct and representation of defendants. Thus, rather than viewing the Act and rules as conflicting, we presume the legislature intended that the public defender's obligations under the Act would be read in light of the public defender's ethical obligations. *See Waters*, 370 S.W.3d at 609 (statute requiring appointment of public defender must be read together with Sixth Amendment and ethical rules); *Kiernan v. State*, 485 So.2d 460, 461 (Fla. Ct. App. 1986) (statute requiring appointment of public defender must be construed *in pari materia* with ethical standards and statutory authority to appoint private counsel). We therefore reject the circuit court's conclusion that the Act controls over the rules of professional conduct in determining the public defender's availability.

[¶54] Our reading is in keeping with the legislature's intent to secure indigent defendants' Sixth Amendment right to counsel. While a defendant's right to the effective assistance is not defined by the rules of professional conduct, the rules do provide helpful guidance.

*Missouri v. Frye*, 566 U.S. 134, 145, 132 S.Ct. 1399, 1408, 182 L.Ed.2d 379 (2012) ("Though the standard for counsel's performance is not determined solely by reference to codified standards of professional practice, these standards can be important guides."). As another court concluded:

> [The statute requiring the public defender to represent indigent defendants] cannot be construed mechanically, in all circumstances, to mandate the appointment of the public defender if so doing would compromise the effectiveness of his representation. Both ethical considerations and professional standards dictate otherwise.

*State ex rel. Escambia County v. Behr*, 354 So.2d 974, 976 (Fla. Ct. App. 1978).

[¶55]  We turn then to the circuit court's finding that the public defender's concerns of unethical and ineffective assistance were speculative and could not support an assertion of unavailability.  In support of that finding, the court cited Wyo. R. Prof. Conduct 1.16 and observed:

> Manifestly, the rule makes clear that an attorney should not represent a client when that representation *will* result in a violation of the rules of professional conduct.  At the hearing, Respondent asserted her attorneys were working at 168% of capacity and were unable to represent clients without violating the rules of professional conduct.  *Lozano testimony*. However, Respondent and her Trial Field Office Supervisor both admitted that the office's functioning was no less effective on May 1, 2019 than it had been April 1, 2019 or in parts of March, 2019 (i.e., when the office was short-staffed, but prior to her declaration of unavailability).  *Id*.  Thus, this Court finds the assertion that continued representation *will* result in violations of professional conduct rules speculative, and notes (parenthetically) that her assertion tacitly admits earlier professional conduct violations.

[¶56]  The public defender testified to her actions during the roughly two months between when the Campbell County office lost three of its attorneys and her letter declaring the office's unavailability.  During that time she did the following: consulted with bar counsel concerning her ethical obligations, considered her options under the Public Defender Act, requested permission to fill the vacant positions and took steps to do that, consulted with the Governor's office, consulted with her budget director, and reviewed caseloads in other offices to see if she could draw attorneys from elsewhere.  We disagree that the time it took

the public defender to respond to the situation in Campbell County belies the seriousness of the problems.

[¶57] We cannot fault the public defender for investigating other options before declaring the office's unavailability. That it took time to decide that the only option was to declare the office unavailable does not undermine the public defender's evidence that the ethical concerns were real and imminent. Ms. Lozano testified concerning the public defender's caseload policies and that the Campbell County office was at 168% of the maximum caseload. Counsel for the Wyoming State Bar testified that the public defender's policies on caseloads "support a way of measuring when an attorney's caseload gets to the point where the attorney has no ethical choice but to decline representation." The field supervisor for the Campbell County office testified to instances in which he had appeared on behalf of an indigent defendant without having read the file and without knowing enough about the defendant's circumstances to present available defenses. Based on the unrefuted evidence, the concerns that the Campbell County office could not adhere to its ethical obligations without some relief were not speculative.[12]

[¶58] We also disagree with the circuit court's assertion on appeal that the public defender must prove an individualized injury in fact or make the individualized substantial prejudice showing required by *Strickland v. Washington*, 466 U.S. 668 (1984) before declining representation. This presumes that an attorney cannot act to prevent an ethical violation or violation of the client's right to effective assistance but instead must violate either or both before obtaining relief. This is contrary to the mandate of Rule 1.16 that an attorney ***decline*** representation if it will result in a violation of the attorney's ethical obligations, and it is contrary to the Sixth Amendment's guarantee.

> Arguments to the contrary notwithstanding, *Strickland* does not limit claims asserting Sixth Amendment violations to the post-conviction context. The *Strickland* Court did not hold that post-conviction prejudice is a prerequisite for invocation of the right to counsel. Rather, prejudice in the post-conviction context largely is assessed by balancing the defendant's right to effective assistance of counsel against the state's interest in avoiding the burden of retrial where the ineffective assistance of counsel did not affect the outcome of the trial. Violations of the right to counsel can occur in many different ways, and remedies for such violations are not limited solely to circumstances where prejudice can be proven. Only the remedy of a new trial requires a showing of prejudice.

---

[12] *See, e.g.*, Wyo. R. Prof. Conduct 1.1 ("A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.").

There is ample reason for considering Sixth Amendment violations in this manner. Because the right to a lawyer occupies a unique station in our system of justice, we must recognize that harm necessarily inheres in the deprivation of counsel, including at the earlier stages of a criminal case. The right to counsel is as important in the initial stages of a criminal case as it is at trial. To remedy only deprivations of the latter would foster subversion of the right as soon as it has attached. As the Court of Appeals of Michigan stated in *Duncan*, "there are instances of deficient performance at critical stages in the criminal proceedings that are detrimental to an indigent defendant in some relevant and meaningful fashion, even without neatly wrapping the justiciable harm around a verdict and trial." *Duncan*, 774 N.W.2d at 127.

*Kuren*, 146 A.3d at 743; *see also Tucker v. State*, 394 P.3d 54, 62 (Idaho 2017) (*Strickland* individualized analysis inapplicable when "systemic deficiencies in the provision of public defense are at issue"); *Waters*, 370 S.W.3d at 607 ("No case suggests that a court analyze whether the Sixth Amendment right to counsel has been preserved at all critical stages only by retrospectively determining that the lack of such counsel deprived a defendant of a fair trial."); *Lavalle v. Justices in Hampden Superior Court*, 812 N.E.2d 895, 904 (Mass. 2004) (lack of pretrial investigation and preparation raises serious concerns regarding effectiveness at trial); *Luckey v. Harris*, 860 F.2d 1012, 1017 (11th Cir. 1988) ("The [S]ixth [A]mendment protects rights that do not affect the outcome of a trial. Thus, deficiencies that do not meet the [*Strickland*] "ineffectiveness" standard may nonetheless violate a defendant's rights under the [S]ixth [A]mendment.").[13]

[¶59] In sum, section 105(b) affords the public defender discretion to decline an appointment or appointments. In exercising that discretion, there is no requirement, statutory or otherwise, that the public defender show an individualized injury in fact or meet the *Strickland* post-conviction showing of prejudice.

[¶60] Circuit courts' contempt authority is prescribed by statute. Wyo. Stat. Ann. § 1-21-901(a)(ii) (emphasis added) authorizes circuit courts to punish for contempt "persons guilty of resistance to or disobedience to any *lawful* order;" and Wyo. Stat. Ann. § 5-9-133 allows circuit courts to "compel obedience to its judgments, orders and processes." Regardless of whether the contempt here was civil or criminal, it could only stand if the underlying order was lawful. *See GN v. State* (*In the Int. of CN*), 816 P.2d 1282, 1285 (Wyo. 1991). We

---

[13] We cite these cases for their recognition that a Sixth Amendment violation can occur outside the *Strickland* rubric. The question before us relates to the circumstances under which the public defender may decline representation of indigent defendants, so to the extent these cases recognize a particular cause of action, our reliance on them should not be construed to embrace that aspect of their holdings.

have determined that the circuit court's order mandating that the public defender accept the two misdemeanor appointments was not lawful because it disregarded the public defender's determination that no public defender was available. Because there was no lawful order, the circuit court could not properly find Ms. Lozano in contempt. We therefore do not address the remaining issues concerning the contempt order and the circuit court's jurisdiction to enter it.

[¶61]   Reversed.

**KAUTZ, J.,** specially concurring.

[¶62]   I concur in the result of the majority opinion which eliminates the contempt orders against Ms. Lozano.  However, I reach that conclusion via a somewhat different route.  I do not find it necessary to engage in statutory interpretation, although, as indicated below, I would find the circuit court erred in its construction of the relevant statutes.

[¶63]   **Order To Show Cause and Contempt**.  The circuit court issued orders that the public defender's office represent Mr. Johnson and Mr. Stricker.  Ms. Lozano never moved to be released from the orders appointing her.  Instead, she told the court informally that she could not comply with the orders of appointment because an excessive workload and lack of staff attorneys made the local public defenders "unavailable."  The circuit court then ordered Ms. Lozano to show cause why she should not be held in contempt.  Ms. Lozano responded with a motion asking that the order to show cause be dismissed because she was unable to comply based on the lack of an "available" public defender.  In effect, Ms. Lozano argued she did not willfully disregard the court's order, as she did not have an available attorney.  After a hearing, the circuit court denied Ms. Lozano's motion to dismiss, finding, among other things, that she "willfully failed and refused to comply with lawful court orders."  I conclude this finding was contrary to the evidence.  The resulting finding of contempt therefore was an abuse of discretion.

[¶64]   The circuit court found Ms. Lozano in civil contempt, and followed a civil contempt procedure.  The elements of contempt are clear:

> "Civil contempt must be proven by clear and convincing evidence." *Shindell v. Shindell,* 2014 WY 51, ¶ 10, 322 P.3d 1270, 1273 (Wyo.2014). Clear and convincing evidence is that kind of proof that would persuade the trier of fact that the truth of the contention is highly probable. *Id.* The party requesting the contempt has the burden of proving that: "1) an effective court order that required certain conduct by the alleged contemnor; 2) the contemnor had knowledge of the order; and 3) the alleged contemnor disobeyed the order." *Id.* As to the third element, the burden is to prove that the failure to comply was willful; not simply that the offending party merely failed to comply. "Once those elements are proven, the burden shifts to the person charged with contempt to show he or she was unable to comply." *Id.; see* 17 C.J.S. *Contempt* § 141 (2014).

*Meckem v. Carter*, 2014 WY 52, ¶ 20, 323 P.3d 637, 644 (Wyo. 2014) (footnotes omitted).

[¶65]   No evidence before the circuit court established that the public defender could comply with the orders.  To the contrary, the evidence absolutely established there was no

26

available public defender, as the majority opinion recognizes. The evidence did not show Ms. Lozano willfully failed to provide a public defender for Mr. Johnson or Mr. Stricker, but instead showed she could not reasonably do so. The threshold requirement of willful failure to comply was not met here. There simply was no evidence which could support a finding that there was an available public defender when the Johnson and Stricker appointments occurred. As a result, the circuit court's order of contempt must be reversed.

[¶66] Our review should end at this point. It does not matter whether the statutes authorize Ms. Lozano to unilaterally declare unavailability, or require her to establish unavailability to the court.

[¶67] **Statutory Interpretation.** If we find it necessary to analyze the statutes about appointment of public defenders, I concur with nearly all the majority's well-reasoned analysis. The circuit court incorrectly concluded that portions of the public defender statutes are in conflict. However, I conclude that under our statutes the public defender does not have unreviewable authority to declare the attorneys in her office are not "available." Rather, the intent of the statutes, in my reading, is that the appointing court determines whether there is an available public defender.

[¶68] Wyo. Stat. Ann. § 7-6-105(b) (LexisNexis 2020) indicates that "the court shall notify an available public defender … or shall appoint an attorney to represent the needy person if no public defender is available." As the majority recognizes, this "begs the question of who is to make the determination of unavailability, the appointing court or the public defender."

[¶69] Because the statute requires **the court** to notify an available public defender, and requires **the court** to appoint someone else if no public defender is available, I conclude the statute intends for **the court** to make the final decision about availability. No language in the statutes indicates the public defender decides availability and then dictates that to the court.

[¶70] The context of the public defender statutes in the criminal process indicates to me that the court decides availability. It is obvious that by appointing a public defender, the appointing court is impliedly finding that the public defender is available. Likewise, if the appointing court finds no public defender is available, it appoints someone other than the public defender. Such findings are judicial functions, not circumstances which the executive branch may unilaterally dictate to the court.

[¶71] The process, if the court determines availability, is workable and logical. For example, sometimes the availability of a public defender can be determined in advance of appointment. In such a situation, like the circumstances here, the public defender may inform the court in advance of the facts indicating unavailability. That is what happened here. The process of informing the court of the facts about availability in advance is not

cumbersome, but appropriate so the court can decide that issue when choosing whether to appoint a public defender. Such a process would not require individual evidentiary hearings in every indigent defendant's case. If, as here, the public defender disagreed with the court's decision, she could move to be relieved of the appointment order, appeal, or petition for review. On review, the court's decision about availability would be reviewed for an abuse of discretion.

[¶72] Other times, the facts about unavailability may become known only after appointment. Then, the public defender would move to be relieved of the order and present the factual basis for asserting no public defender is available. In either circumstance, the court would provide appropriate review of the facts relied upon by the public defender, providing appropriate judicial review before spending additional state funds on private counsel.

[¶73] Such an interpretation of these statutes considers the plain and ordinary meaning of the words used, it reads the provisions and terms of the statutes in context, it gives meaning to each provision, and it finds a thoughtful and rational intent on the part of the legislature. I would hold that under the statutes, the public defender should provide evidence to the court about availability, but the appointing court makes the final decision under § 7-6-105(b). In this case, I conclude that the circuit court abused its discretion in its failure to find the public defender attorneys unavailable for misdemeanors.